IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SUSAN W.,[1] <br><br>  Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>  Defendant. | Civil No. 22-cv-05765 (RMB) <br><br><br> **OPINION** |

**APPEARANCES**

Jennifer L. Stonage
Bross & Frankel, P.A.
725 Kenilworth Ave
Cherry Hill, New Jersey 08002

   *On behalf of Plaintiff*

Sandra Romagnole
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235

   *On behalf of Defendant*

**RENÉE MARIE BUMB, Chief United States District Judge:**

   Plaintiff Susan W. asks this Court to reverse the Commissioner of Social Security's

(Commissioner) denial of her application for Disability Insurance Benefits (DIB) under Title

II of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq.*  Susan argues the required

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts should refer to plaintiffs in social security disability cases by only their first names and last initials given the significant privacy concerns in these matters. *See also* D.N.J. Standing Order 2021-10.

substantial evidence needed to uphold that decision is lacking because it: (1) flouts the Appeals Council's remand order requiring the administrative law judge (ALJ) to consider, among other things, the "nature, severity, and limiting effects" of her headaches, which Susan argues the ALJ failed to do; (2) overlooks, among other things, her hearing loss, tinnitus, and temporomandibular joint disorder (TMJ); (3) sidesteps the medical necessity of her walker and cane; and (4) ignores or discounts medical opinions of various state medical consultants and Susan's treating physicians.

Despite the ALJ's lengthy decision, this Court is constrained to remand this matter. It appears the ALJ never considered whether Susan's hearing loss, tinnitus, and TMJ are medically determinable impairments affecting her ability to perform basic work activities or how those disorders affect her residual functional capacity. And it appears the ALJ ignored the opinion evidence from Susan's doctor who treated her hearing loss and tinnitus. Accordingly, the Court **VACATES** the Commissioner's decision and **REMANDS** for further consideration consistent with this Opinion.

## I. LEGAL STANDARDS

### A. Standard of Review

The Act grants federal courts limited power to review the Commissioner's decision to deny an applicant DIB. 42 U.S.C. § 405(g). While courts conduct a plenary review of all legal issues the Commissioner decides, *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000), the Act requires courts to uphold the Commissioner's factual decisions if supported by "substantial evidence," *see* 42 U.S.C. § 405(g). *See also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). This evidentiary threshold is "not high" and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

*Berryhill*, 587 U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019)  (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   The substantial evidence standard is a deferential one, and a court cannot set aside the Commissioner's decision merely because "acting de novo [it] might have reached a different conclusion."   *See Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986).   Indeed, courts cannot "weigh the evidence or substitute [its own] conclusions for those of the [Commissioner.]"   *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (first alteration in original, internal quotation marks and citation omitted).

Still, while deferential, the substantial evidence inquiry is not a perfunctory exercise to rubberstamp the Commissioner's decision.  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining the substantial evidence standard is not "a talismanic or self-executing formula for adjudication," rather, the standard requires a "qualitative exercise").   Thus, when reviewing the Commissioner's decision, courts must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (internal quotation marks and citation omitted).

Where, as here, the Appeals Council denies a claimant's request for a review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision."  *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).   The ALJ's decision must have enough information to "permit meaningful judicial review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  This requires the ALJ to explain what evidence the judge considered that "supports the result" and "some indication of the evidence [the judge] rejected."  *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

Otherwise, courts "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Courts will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict. *Fargnoli v. Massanari*, 247 F.3d 34, 41-42 (3d Cir. 2001).

**B. The Social Security Disability Determination**

To qualify for DIB, a claimant must show she is disabled. 42 U.S.C. § 423. "Under the [Act,] a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli*, 247 F.3d at 38-39 (internal quotation marks and citation omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner makes a disability determination through a five-step sequential process. 20 C.F.R. § 404.1520(a)(4). For steps one through four, the claimant bears the burden of proof. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). At the fifth step, the Commissioner shoulders the burden. *Id.* The five-steps are:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If [she] is, [she] is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [she] has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, [she] is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether [she] can perform [her] "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [she] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [she] cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [she] is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## II. BACKGROUND

### A. Procedural History

This case has a long history.  In June 2016, Susan applied for DIB under the Act alleging a disability onset date of March 17, 2015.  [Administrative Record (AR) 79.]  Susan alleged a host of impairments she claimed disabled her, such as nerve damage, damaged spinal discs, spinal cord injury, vertebrae injuries, headaches, leg cramping, hip problems, and

5

loss of sensation in both hands.  [AR79-80.]  The Commissioner denied Susan's initial application and her request for reconsideration, finding her not disabled.  [AR80-109.]  Susan then requested a hearing before an ALJ on the denial of her DIB application.  [AR10.]  The ALJ issued an unfavorable decision, concluding she was not disabled and could perform sedentary work with some limitations.  [AR17.]  Susan appealed that decision, which the Appeals Council denied.  [AR1.]

Susan then sued in federal court seeking to overturn the Commissioner's decision to deny her DIB.  [*Susan W. v. Comm'r of Soc. Sec.*, No. 1:20-cv-02922-NLH (Docket No. 1 (Complaint)).]  Susan and the Commissioner agreed to a consent order to remand her case for additional administrative proceedings.  [AR788.]  The Appeals Council then vacated the ALJ's initial decision and ordered a new hearing.  [AR794-96.]

In doing so, the Appeals Council found that the ALJ did not consider all the opinion evidence in the record from doctors affiliated with the New Jersey Department of Labor and Workforce Development.  [AR794.]  The Appeals Council directed the ALJ to consider the medical opinion evidence from Steven Valentino, D.O., Barry Coniglio, D.C., and Kishor Patil, M.D. [*Id.*]  The Appeals Council also instructed the ALJ to consider "the nature, severity, and limiting effects of [Susan's] headaches" because Susan alleged disability, in part, because of her headaches, but found the ALJ provided no analysis on the nature, severity, or limiting effect of her headaches.  [AR795.]  The Appeals Council also faulted the ALJ for discounting certain medical evidence when evaluating Susan's residual functional capacity (RFC) because the judge did not provide a "narrative discussion regarding the limitations in the [RFC]" since some of the opinion evidence predated Susan's back surgery.  [*Id.*]  On this point, the Appeals Council instructed the ALJ to give "further consideration to [Susan]'s

6

maximum residual functional capacity during the entire period at issue . . . ." [*Id.*] The Appeals Council also instructed the ALJ to obtain additional evidence from a vocational expert "to clarify the effects of the assessed limitations on [Susan's] occupational base" and to ask the expert hypothetical questions that "reflect the specific capacity/limitations established by the record as a whole." [AR796.]

## B. The ALJ's Decision Under Review and the Appeals Council's Decision

Following the remand, the ALJ held another hearing where Susan and a vocational expert testified. [AR753-86.] After the hearing, the ALJ again issued an unfavorable decision finding Susan not disabled. [AR745.]

For step one, the ALJ found that Susan had not engaged in "substantial gainful activity" since her alleged onset date of March 17, 2015. [AR735.] Proceeding to step two, the ALJ found Susan had three severe impairments that "significantly limit" her ability to perform basic work activities: degenerative disc disease, degenerative joint disease, and carpal tunnel syndrome. [*Id.*] The ALJ also found Susan had several "non-severe impairments," such as "chronic obstructive pulmonary disease, seizure disorder, a macular cyst, and obesity." [*Id.*] The ALJ characterized those impairments as non-severe because the medical evidence did not "establish that they create more than a minimal limitation on [her] ability to perform basic work activities." [*Id.*] In addition, the ALJ rejected Susan's claim that her fibromyalgia constituted a determinable impairment since the medical record did not support her description on the duration or frequency of the condition. [AR735-36.] The ALJ found that while Susan's rheumatologist noted she "endorsed some signs of fibromyalgia," the doctor "did not note any tender points on exam." [AR735.] On this point, the ALJ observed

7

that the doctor found "no significant myofascial tenderness at 11/18 tender points." [*Id.*]   But at this step, the ALJ never mentioned Susan's headaches, her hearing loss, tinnitus, or TMJ.

Onto step three, the ALJ determined that none of Susan's impairments, either individually or collectively, met or equaled the severity of impairments listed in the regulations.   [AR736.]   In doing so, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), l.18 (abnormality of a major joint(s) in any extremity), and 11.00 (categories of neurological impairments).

At step four, the ALJ determined that Susan has the RFC to perform sedentary work with certain limitations.   [AR738.]   After reviewing Susan's testimony, the medical record, and the opinion evidence, the ALJ concluded that Susan's "medically determinable impairments could be reasonably expected to cause [her] alleged symptoms." [AR739.]   But the ALJ found Susan's statements on "the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and the other evidence in the record."   [*Id.*]   The ALJ considered Susan's testimony on her symptoms from both hearings and her medical records, including her headaches. [AR739-42.]   The ALJ found the medical evidence was "not entirely consistent with [her] allegations of disability."   [AR742.] And after reviewing the medical opinion evidence, the ALJ found that Susan's statements on her inability to work were "not supported and . . . not consistent in light of the discrepancies between [her] assertions, testimony, and medical record."   [AR744.]   In reaching this conclusion, the ALJ pointed to the "routine and conservative" treatment she received before her 2018 back surgery, how she "did well" after the surgery, the little treatment she received for her neck problems despite her complaints, and "the significant gaps in her treatment."

8

[*Id.*]  Accordingly, the ALJ found that Susan had the RFC to perform sedentary work with certain limitations due to her impairments, such as she can "only frequently push and pull with the non-dominant left upper extremity."  [*Id.*]  As a result, the ALJ found Susan capable of performing her past work as a real estate clerk, legal secretary, and customer service representative.  [AR745.]  While the ALJ noted Susan alleged hearing loss, see AR739, the judge never mentioned her hearing loss, tinnitus, or TMJ or those conditions' limitations (if any) when formulating Susan's RFC.

Susan then filed exceptions to the ALJ's unfavorable decision arguing, among other things, the ALJ did not consider her headaches at step two as the Appeals Council instructed the judge to do. [AR849-51.]  The Appeals Council found Susan's argument meritless and refused to assume jurisdiction.  [*Id.*]  In doing so, the Appeals Council found the ALJ had addressed Susan's headaches.  [*Id.*]  It noted the medical evidence showed Susan started endorsing headaches following a car crash that caused her to suffer a cervical spine injury. [AR722.]  The Appeals Council also noted that the medical records revealed that Susan's headaches related to her neck injury.  [*Id.*]  Relying on SSA Ruling 19-4p, the Appeals Council found Susan's headaches to be "secondary headaches"—headaches attributed to trauma or injury to the head—and thus not "a medically determinable impairment."  [Id.]  The Appeals Council further found the ALJ specifically evaluated Susan's degenerative disc disease—the medical condition causing Susan's headaches—and the treatment of this impairment. [AR723.]  The Appeals Council noted the ALJ found that Susan endorsed improvement to her headaches after undergoing chiropractic therapy and acupuncture.  [*Id.*]  According to the Appeals Council, by addressing Susan's underlying medical condition causing the headaches, the ALJ did consider her headaches.  [*Id.*]

9

## III. DISCUSSION

Susan raises several challenges to the Commissioner's decision to deny her DIB:  (1) the ALJ failed to follow the Appeals Council's remand order because the judge did not consider her headaches at step two, did not consider the limiting effects of her headaches at step four, and ignored other alleged impairments, such as her hearing loss, tinnitus, TMJ, and balance issues (to name a few); (2) the ALJ did not consider the medical necessity of her walker and cane; and (3) the ALJ improperly discounted the opinion evidence of various doctors and physicians—some of her own treating medical care providers and government consultants.  [Susan's Mem. of Law 17-33 (Pl. Br.) (Docket No. 10).]  According to Susan, those failures require this Court to remand the matter back to the ALJ once more.  [*Id.*]  The Court partly agrees with her.

### A. The ALJ's failures to consider Susan's impairments at step two and in the RFC determination.

Normally, when an ALJ finds at least one severe medical impairment at step two and continues onto the other steps, the ALJ's failure to consider other impairments or find that a particular impairment to be non-severe is a harmless error.  *Jennifer V. v. Comm'r of Soc. Sec.,* 2022 WL 1044966, at *4 (D.N.J. Apr. 7, 2022); *see also Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) ("Because the ALJ found in [plaintiff's] favor at [s]tep [t]wo, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").  This is because the step two inquiry is a "screening device" designed "to dispose of groundless claims."  *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir. 2003).

But that error is harmless only if the ALJ considers the "missing medically determinable impairment in the RFC assessment and it would not otherwise affect the

10

outcome of the case." *Friday v. Comm'r of Soc. Sec.*, 2021 WL 3879081, at \*4 (D.N.J. Aug. 31, 2021). Indeed, ALJs must consider all the claimant's medically determinable impairments, severe or not, in combination in the RFC assessment. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). An ALJ's decision denying DIB lacks substantial evidentiary support if the judge both ignored a claimant's medically determinable impairment at step two and in the RFC determination. *Friday*, 2021 WL 3879081, at \*7 ("[B]ecause the ALJ failed to consider Plaintiff's medically determinable impairments of migraines, headaches, TMJ, and anxiety at step two and in the RFC determination as required under the governing regulations, the Court cannot find that the ALJ's decision is supported by substantial evidence."); *see also Jennifer V.*, 2022 WL 1044966, at \*5 (remanding because the ALJ did not consider claimant's mental impairments in the RFC determination even though the judge found the impairments to be non-severe at step two).

1. **The ALJ's failure to consider Susan's tinnitus, hearing loss, and TMJ at step two and in the RFC determination is not a harmless error, and so, a remand is required.**

In 2017, Susan underwent an audiologic evaluation because she had "a history of constant tinnitus" and hearing loss. [AR964-967.] Her treating physician, Dr. Howard Bresalier, D.O., diagnosed her with bilateral sensory hearing loss and bilateral tinnitus. [AR969.] In a 2018 follow up appointment, Dr. Bresalier concluded another audiologic evaluation showed "very similar" test results from her previous exam with some improvement in the hearing loss in her left ear. [AR974.] But in a 2019 follow up, the doctor found Susan's

11

"tinnitus has gotten worse and she has significant pain intermittently in her ears right worse than left." [AR977.]   The doctor also noted Susan had "significant dental issues" likely caused by "significant TMJ syndrome" and recommended she follow up with her dentist. [AR978.]   In a February 2019 letter (presumably to the Commissioner), Dr. Bresalier wrote that he had been treating Susan for "a long history of hearing loss, ringing in her ears and most recent problems with her jaw joint." [AR979.]  The doctor asserted "[t]he TMJ worsens her tinnitus causing ear pain and discomfort." [*Id.*]  The doctor concluded that Susan is a "poor candidate" for hearing aids because "[s]he has very small ear canals" and would be unable "to access her inner ear." [*Id.*]  In addition, the doctor asserted Susan "cannot wear earbuds because they also do not fit in her ears and she is unable to hear when she uses her headsets." [*Id.*]

At her second hearing before the ALJ in 2021, Susan testified that she had been diagnosed with tinnitus and hearing loss.  [AR775-76.]  She testified to losing "an additional 25%" of her hearing.  [AR776.]  According to Susan, she could not perform her past jobs in customer service because she would struggle to hear the customer.  [*Id.*]

Despite the medical evidence and Susan's testimony, the ALJ's decision never mentions Susan's tinnitus, hearing loss, or TMJ at step two or in the RFC determination.  Her tinnitus, hearing loss, and TMJ are medically determinable impairments because they can be established by objective medical evidence.  20 C.F.R. § 404.1521; *see also Friday*, 2021 WL 3879081, *4 (finding TMJ to be a medically determinable impairment).  While those conditions may be non-severe because they may not significantly limit Susan's ability to perform basic work activities, *see* 20 C.F.R. § 404.1522(a), the ALJ had an obligation to determine the severity of the impairment at step two (if any) and what functional limitations

(if any) the impairments impose on Susan in the RFC determination.  *See Robert E. v. Comm'r of Soc. Sec.*, 2021 WL 5277193, at *6 (D.N.J. Nov. 12, 2021) ("If a claimant has demonstrated at least one severe medically determinable impairment, the ALJ must consider that severe impairment in combination with all the additional medically determinable impairments in combination while formulating the RFC.").  That did not happen.

Indeed, the ALJ never mentions those impairments even though the ALJ recognized that Susan alleged "hearing loss."  [AR739.]  Without considering those impairments, this Court cannot say substantial evidence supports the ALJ's decision.  *Friday*, 2021 WL 3879081, at *7; *see also Theonen v. Comm'r of Soc. Sec.,* 2022 WL 3577414, at *4-5 (N.D. Ohio Aug. 19, 2022) (remanding because ALJ failed to address claimant's tinnitus at step two and the functional limitations caused by the impairment).   Indeed, the government has not even responded to Susan's argument on this point and its silence is telling.

Moreover, the ALJ compounded that error by not asking the vocational expert a hypothetical question with hearing loss or tinnitus as a limitation.  This is problematic because Susan testified about the effect of her hearing loss on her ability to perform her past work as a customer service representative.  [AR776.]  She also testified that her job in customer service "involved headsets."  [AR764.]  That error, coupled with the ALJ's failure to consider Susan's tinnitus, hearing loss, and TMJ, undermines the ALJ's findings at steps four and five on Susan's ability to work because those findings depend on the RFC determination. 20 C.F.R. § 404.1520(a)(4)(iv-v) (requiring the Commissioner to consider the RFC assessment to determine whether claimant can perform past relevant work or make an adjustment to other work).

The Court recognizes that Susan's hearing loss, tinnitus, and TMJ, even when properly considered with her other impairments, may not require more workplace restrictions. Even if those conditions are non-severe, and thus may well not significantly limit Susan's ability to do basic work activities, those conditions—"when considered with limitations or restrictions due to other impairments"—may "be critical to the outcome of a claim." SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996). But that is a determination the ALJ must make, not this Court. *Theonen,* 2022 WL 3577414, at *4; *see also Friday*, 2021 WL 3879081, at *6 ("[T]he Court cannot independently determine whether Plaintiff's migraines, headaches, and TMJ are severe or not severe at step two, and the Court cannot redo the RFC determination."). Indeed, this Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Rutherford,* 399 F.3d at 552. Because the Court is not satisfied that the ALJ considered all the relevant evidence and correctly applied the legal standards, the Court remands this matter. On remand, the ALJ must redo the step two analysis and the other steps in the sequential analysis, including a revised RFC determination, and consider all of Susan's medically determinable impairments and their limitations.

**2.   Despite Susan's contrary arguments, the ALJ addressed her headaches in the RFC determination but found her testimony on the intensity, persistence, and limiting effects of her headaches not credible.**

While the Court is remanding the matter, the Court briefly addresses Susan's argument that the ALJ flouted the Appeals Council's remand order by not considering her headaches.

To start, the Court lacks jurisdiction to review an ALJ's compliance with a remand order from the Appeals Council. This is so because the Act specifically limits judicial review to the Commissioner's final decision. 42 U.S.C. § 405(g). "Numerous courts in our circuit have relied upon this principle to hold that district courts lack the authority to consider

whether an ALJ complied with a remand order of the Appeals Council." *Kissell v. Berryhill*, 2018 WL 4207746, at *5 (M.D. Pa. Sept. 4, 2018) (collecting cases); *see also Miller v. Saul*, 2020 WL 6822974, at *11 (M.D. Pa. Nov. 20, 2020) ("[W]e lack the authority to consider whether the ALJ complied with a remand order."), *aff'd sub nom.*, *Miller v. Comm'r of Soc. Sec.*, 2021 WL 3137439 (3d Cir. July 26, 2021). Rather, courts must focus on whether substantial evidence supports the ALJ's decision. *Pearson v. Colvin*, 2015 WL 9581749, at *4 (D.N.J. Dec. 30, 2015) ("The appropriate focus for review is upon the ALJ's final decision, not the prior Appeals Council remand order."). Since the Court remands, Susan's argument on the ALJ's compliance with the Appeals Council's remand order is moot.

In any event, the ALJ did not ignore Susan's headaches in the judge's decision as she claims. True, the ALJ did not consider her headaches at step two of the disability determination. [AR735-36.] But the ALJ considered her headaches in the RFC determination. [AR738-44.] Indeed, the ALJ thoroughly reviewed Susan's subjective complaints of her headaches and the medical records discussing her complaints of headaches. [AR738-42.] The ALJ, relying on SSR 16-3p, found Susan's medically determinable impairments "could reasonably be expected" to cause her symptoms. [AR739.] But the ALJ found Susan's statements on the "intensity, persistence, and limiting effects" of her symptoms not credible since the statements were "not entirely consistent with the medical evidence and other evidence." [*Id.*]

A claimant's statements about her pain or symptoms cannot alone establish that she is disabled. 20 C.F.R. § 404.1529(a). To evaluate the claimant's credibility, the ALJ must consider the extent to which the claimant's self-reported symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Rock v.*

*Comm'r of Soc. Sec.,* 2021 WL 2177512, at *5 (D.N.J. May 28, 2021) (quoting 20 C.F.R. §
404.1529(a)).   If an ALJ finds the claimant's subjective complaints inconsistent with the
objective medical evidence, the ALJ may discount the complaints.  20 C.F.R. 404.1529(c)(4).
While "the ALJ must seriously consider a claimant's subjective complaints, it is within the
ALJ's discretion to weigh such complaints against the medical evidence, and to reject them."
*Vanord v. Colvin*, 2014 WL 585413, at *2 (W.D. Pa. Feb. 14, 2014) (quoting *Harris v. Astrue*,
886 F. Supp. 2d 416, 426 (D. Del. 2012)); *see also Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x
159, 164 (3d Cir. 2008) ("Inconsistencies in a claimant's testimony or daily activities permit
an ALJ to conclude that some or all of the claimant's testimony about her limitations or
symptoms is less than fully credible.").   Indeed, an ALJ may reject a claimant's subjective
complaints so long the judge "provides sufficient reasons for doing so."  *Prokopick v. Comm'r
of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008).

Here, when concluding that Susan's statements on the intensity, persistence, and
limiting effects of her symptoms were not entirely credible, the ALJ examined the entire
medical record.  [AR738-42.]  The ALJ looked to the conservative nature of her treatment
before her 2018 back surgery and her self-reporting that her headaches improved with
chiropractic and acupuncture therapy.  [AR740.]  The ALJ also looked to Susan's daily
activities—exercising on a stationary bike, aqua therapy, performing household chores,
watching her grandchildren, and sitting through a Philly's baseball game from start to finish
once or twice a year.  [AR738-41.]  And the ALJ noted Susan only took over-the-counter
medication to treat her headaches because "she does not like how stronger medication makes
her feel." [AR739.]  Given the record, the ALJ had the discretion to reject her testimony on
the debilitating effects of her headaches.  *Garrett*, 274 F. App'x at 164 (finding ALJ properly

discounted claimant's testimony on the limiting effects of his impairments by examining the conservative treatment claimant received and his daily activities).  The Court also finds that the ALJ applied the correct legal standards by looking to SSR 16-3p's factors for guidance. 2016 WL 1119029, at *7 (Mar. 16, 2016) (listing factors to evaluate the intensity, persistence, and limiting effects of claimant's symptoms such as the claimant's daily activities and medication).  And the Court finds the ALJ gave sufficient reasons for not entirely crediting Susan' statements on the intensity, persistence, and limiting effects of her symptoms. *Prokopick*, 272 F. App'x at 199.

That said, because the Court is remanding the matter for the ALJ to redo the step two analysis and the RFC determination, the ALJ must consider all of Susan's medically determinable impairments and their limitations, including her headaches.

**B. The ALJ's failure to consider the opinion evidence from Dr. Bresalier on Susan's hearing loss and tinnitus requires a remand.**

"[A]n ALJ may not simply ignore the opinion of a competent, informed treating physician." *Gilliand v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986).  If the ALJ ignores the opinion of a treating physician, the Commissioner's finding is not supported by substantial evidence, and a remand is necessary.  *Karge v. Comm'r of Soc. Sec.*, 2018 WL 6077981, at *5 (D.N.J. Nov. 21, 2018) (finding substantial evidence did not support ALJ's decision and "remanding for resolution" because "ALJ failed to fully identify, weigh, and consider all of the medical evidence of record, including the medical opinions of Plaintiff's treating physicians"); *see also A.E. v. Comm'r of Soc. Sec.*, 2021 WL 5905704, at *6 (D.N.J. Dec. 14, 2021) (finding substantial evidence did not support ALJ's decision because, among other reasons, ALJ gave no weight to plaintiff's treating physician).  This is so because the ALJ must "accord treating physicians' reports great weight, especially when their opinions reflect

17

expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Here, the ALJ's decision does not mention Dr. Bresalier's treatment of Susan for hearing loss or tinnitus.  Nor is there any discussion on Dr. Bresalier's opinion that Susan's tinnitus appears to "significantly obstruct her life" and that she is a "poor candidate for hearing aids" because of her small ear canals.  [AR979.]  Despite the government's contrary argument that the ALJ considered Dr. Bresalier's opinion, see Government's Opp'n Mem. of Law 20 (Docket No. 11), Dr. Bresalier's opinion is absent from the ALJ's decision.  The government identifies no part of the ALJ's decision where the judge supposedly addressed Dr. Bresalier's opinion.  The ALJ's failure to consider Dr. Bresalier's opinion and treatment of Susan requires a remand for resolution.  *Karge*, 2018 WL 6077981, at *5.  Indeed, because an ALJ "cannot reject evidence for no reason or for the wrong reason," the judge must explain why the judge rejected probative evidence "so that a reviewing court can determine whether the reasons for rejection were improper."  *Cotter*, 642 F.2d at 706-07.  On remand, the ALJ must consider the evidence on Susan's hearing loss and tinnitus and Dr. Bresalier's opinion on those conditions.   If the ALJ opts to reject or discount Dr. Bresalier's opinion, then the ALJ must point to specific "contradictory medical evidence that supports [the judge's] decision for doing so." *Karge*, 2018 WL 6077981, at *6 (quoting *Ruberti v. Comm'r of Soc. Sec.*, 2017 WL 6492017, at *8 (D.N.J. Dec. 19, 2017)). [2]

---

[2] Because the Court is remanding the matter for the ALJ to consider Dr. Bresalier's opinion and treatment of Susan, the Court declines to address Susan's other arguments on the ALJ's treatment of Susan's other medical care providers and medical consultants.  [Pl. Br. at 29-33.]  An "ALJ is free to choose the medical opinion of one doctor over that of another," so as long the judge "consider[s] all the evidence and give[s] some reason for discounting the evidence [the judge] rejects."  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009) (quoting *Plummet v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  On remand, the ALJ must be mindful of that principle and if the judge opts to reject or discount medical opinion evidence, the judge must adequately explain the reasons for doing so.  *See Fargnoli*, 247 F.3d at 42.

**C. The medical record does not establish that Susan's use of cane or walker is medically necessary**.

Although the Court is remanding this matter, the Court briefly addresses Susan's argument that the ALJ disregarded her use of a cane. As Susan acknowledges, an ALJ need only accommodate the use of a cane in the RFC determination if the cane is "medically necessary." [Pl's Br. at 28 (quoting *Kilgore v. Kijakazi*, 2021 WL 5759034, at *7 (M.D. Pa. Dec. 3, 2021)).] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (alteration in original) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). Evidence that a medical provider prescribed a cane or that the claimant used a cane is—without more—insufficient to show the cane is medically required. *Id.* (finding medical record evidence showing doctor prescribed cane and claimant used cane with "no discussion of its medical necessity" is "insufficient to support a finding that his cane was medically necessary").

Here, the medical evidence before the ALJ did not establish that Susan's use of a cane is medically necessary. Following her 2018 back surgery, Susan began to use a walker. In a post-operation follow-up appointment, her doctor wanted "to wean her from her walker" and prescribed a cane. [AR989.] At the same time, the doctor noted that the instrumentation in her back was "in good position." [*Id.*] In another follow up appointment, Susan reported "doing quite well" and "[h]er legs feel significantly better." [AR991.] Again, the doctor found the instrumentation in her back to be "in good position." [*Id.*] Following that appointment, Susan again reported "doing pretty well" and again the doctor found the instrumentation in her back to "be in good position." [AR993.] While Susan later reported lower back pain, the

doctor still found the instrumentation in her back to be in good position. [AR741.] Susan then underwent physical therapy and was discharged after she "plateaued with gains" having achieved "70% of therapy goals." [AR1042.] At the time, Susan was ambulating with a quad cane, but was instructed that a single-point cane would be better. [*Id.*] Despite her complaints of back pain and use of a cane to help ambulate, she reported riding a stationary bike for two miles "twice a day" and doing "home exercises for strengthening and balance" a few days a week. [AR1101.]

As the ALJ repeatedly found after surveying the medical evidence, "there is no documented medical need for an assistive device." [AR736-37.] Given the record, the Court cannot say the medical documentation shows that Susan's use of a cane is medically necessary. *Howze*, 53 F. App'x at 222. That said, because the Court is remanding the matter for the ALJ to redo the step two analysis and RFC determination, the ALJ should again examine the medical evidence (and any new evidence Susan presents) to determine whether her cane is medically necessary.

## IV. CONCLUSION

For the above reasons, the Court **VACATES** the Commissioner's decision to deny Susan DIB and the Commissioner's finding that Susan is not disabled, and **REMANDS** this matter for further administrative proceedings consistent with this Opinion.

An accompanying Order as of today's date shall issue.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: September 29, 2023